————o————

LOUISIANA BEDFORD, Appellant, *vs.* JAMES L. MOORE AND JOSEPH C. MOORE, Respondents.

1. *Trusts and trustees—Redemption—Acceptance of part of land in satisfaction.—* Where a party at a judicial sale constitutes himself a trustee, by deterring others from bidding, and the party entitled to redeem accepts a deed for part of the land tendered in satisfaction, it amounts to a bar to further redemption.

*Appeal from Mississippi Circuit Court.*

*Louis Houck,* for Appellant.

*Glover & Shepley,* for Respondents.

ADAMS, Judge, delivered the opinion of the court.

Bedford v. Moore.

The petition sets out that the plaintiff is the widow of one Alfred M. Bedford, deceased; that in his life-time the said Bedford owned certain real estate, being the east half of the south-east quarter of section 6, township 26, north range 16 east; that he mortgaged this property, and that defendants became the holders of that mortgage by assignment; that by decree of the Mississippi Circuit Court the equity of redemption of said Alfred in said real estate was foreclosed, but at the time of said purchase it was understood by said Alfred and defendants that the said foreclosure should not debar the said Alfred, his heirs or assigns, from redeeming said real estate, by the payment of the mortgage money and interest and costs, and that with that understanding the said real estate was sold under said decree, and that defendants became the purchasers for $500, being about the one-sixth part of the real value of said real estate; and that the said realty would not have sold for such an inadequate price, but for the fact that defendants on the day of sale publicly proclaimed, that if they became the purchasers of said realty, the said Alfred should have the right to redeem the same on payment of the amount due on mortgage.

The petition further states, that said Alfred died in January, 1870; and that he did not redeem in his life-time; that since his death, plaintiff being entitled to dower and homestead in said realty, paid the amount due on said mortgage, with interest and costs, and in addition to that, another large debt of said Alfred, to redeem said land and discharge it from all liens and incumbrances whatsoever due to defendants; and that the defendants, although paid in full, have refused to reconvey said real estate; wherefore the plaintiff prays, that they may be compelled so to do.

The defendants deny every allegation of the petition, and set up that on or about the 29th day of November, 1865, during the life-time of said Bedford, by virtue of several executions, all the interest of said Bedford in said land was sold to one George Whitcomb. The defendants in their answer further state, that on the 22nd day of May, 1868, the equity of

said realty was sold to George Whitcomb by virtue of a decree of foreclosure obtained in the Mississippi County Court, and that Alfred M. Bedford owned no equity of redemption, and had no right to redeem the said realty. And further defendants say, that the plaintiff has long since relinquished her right of dower and all other right or title she ever had or held in or unto said land, except seventy acres which defendants conveyed to her. And James L. Moore for himself says, that he never at any time had a conversation with Alfred M. Bedford, in regard to the said land. And in conclusion, the defendants say, that they admit that the amount of money in the petition specified was paid, but deny that it was paid for redemption, but that it was paid upon another consideration, that it was paid as the purchase price.

In her replication, the plaintiff denies all the allegations of the answer.

At the May Term, 1873, this cause was tried. At the trial Louisiana Bedford introduced herself as a witness and testified, that it was always her understanding that by paying the money she should have the land—that she saw Mr. Joseph C. Moore in regard to the redemption of the land, and that he asked her if she could not by some means hold on to the land, and that she told him that she had no means except some swamp land —that at no time did Mr. Moore intimate that he intended to hold on or keep a part of the land—that she always understood that if she paid the money she should have all the land back. On cross-examination she says that she does not remember that Jos. C. Moore told her, that she, her husband and Mr. George Whitcomb had conveyed to Mr. Thomas Allen one-fourth of the south 40 acres, excepting the house, but says that she remembers that to be a fact, that she does not remember that Jos. C. Moore, in any conversation with her expressed a desire to hold back a part of the land; that at the time she talked to Jos. C. Moore at his office, James L. Moore was there, and taking part in the conversation; that she did not have possession of the money that was paid to the Moores, that Mr. Patterson acted as her agent and attorney; that she

has an interest in this suit; that the suit is prosecuted for her benefit; that she expected to get all the land when the money was paid; but that it came different; that she never promised Mr. Deal to convey the one-fourth in dispute to Mr. Deal or any one; that she never had a conversation with Mr. Deal about the matter.

H. J. Deal then testified that he was at the sale, when the land in controversy was sold, that he made one bid, and that Jos. C. Moore told him that the matter was understood between him and Mr. Bedford, and that he thinks Mr. Moore told him not to bid, that he was going to let Mr. Bedford have the land back, and that after that statement he bid no more; that the land sold for $500, and was worth some $4,000 or $5,000, and that would be a fair valuation. On cross-examination he said, that Thomas Allen paid 3,300 dollars for the property; that when the sale was going on he put in a bid to clog the thing, in order to get time to investigate; that he cannot state exactly what Jos. C. Moore said, but that he did say that he was buying the property in for Mr. Bedford, with a privilege in him to redeem, and for him not to bid; that he has an interest in the result of the suit; that Thomas Allen furnished the money to redeem; that Thomas Allen and he furnished the money to get a part of the land; that Mrs. Bedford has an interest in this suit; that if she does not make a deed to us as she agreed, we will hold her for damages; that she gave a bond for the entire land.

Wm. H. Sherman testifies that he was present when the land was sold, that he made two bids, but made no other bid from some information that he got from Jos. C. Moore; that he asked whether the property by the sale would pass into other hands, and that he understood that it would not; that he cannot give the exact words; that the land sold for $565, that it is worth $3,000; that what Mr. Moore told him deterred witness from bidding any further on the day of sale, and that Moore told him that if there had been a general bidding he would have withdrawn a part of the land; that the land was sold in a lump. On cross-examination he said, that he

made bids after the conversation, and that he was deterred from bidding from what Moore said more particularly.

W. P. Swank testified, that he was at the sale; that at the sale Moore said that whenever Alfred M. Bedford paid the money he would get his land back; that he thinks this was at the time of sale; that the land is worth $50 per acre exclusive of the Bedford dwelling house, and that the house is worth $1,500. On cross-examination he said that the conversation was on the day of sale, and that his understanding was, that whenever Bedford paid the amount of the mortgage he was to have his land back.

James L. Patterson testified that he knew the Moores and Bedford; that he knew the land; that it is the homestead tract; that for the purpose of redeeming this homestead tract he paid $3,200 or $3,300 to Jos. C. Moore for Mrs. Bedford; that Mr. Moore handed him a deed for all the land except about 10 acres; that he paid the money to redeem the entirety of the land; Mrs. Louisiana Bedford is the widow of Alfred M. Bedford, and the land in controversy is a part of the homestead. On cross-examination he said that he never talked to James L. Moore about it.

Jos. C. Moore swears, that he paid James L. Moore a part of the $500 mortgage debt, half of it.

The plaintiff also introduced the deed from Jos. C. Moore and James L. Moore, from which it appears that in consideration of $3,270 they convey to Louisiana Bedford the north-east quarter of the south-east quarter of section 5, township 26, N. R. 16 east, containing 40 acres, and the undivided three-fourths of the south-east quarter of the south-east quarter of section 6, same township and range, that remains after deducting the right of way of the St. L. & I. M. R. R., and other reservations more specifically set out, and unnecessary to be noticed in this abstract. This deed is dated April 13, 1871.

The plaintiff also introduced the deed from Jackson, sheriff, to the Moores, dated Nov. 19th, 1869, from which it appears, that the east half of the south-east quarter of section 6, T. 26, N. R. 16 east, was sold by virtue of a foreclosure of a mortgage dated the 26th day of May, 1855, for the sum of $565.

The defendants then introduced Jos. C. Moore, one of the defendants, who said that he had an interview with Mrs. Bedford; that she wanted him to make her a deed, and that he told her he thought that Bedford's children had some interest in the land; that she said she was buying the land with her own money, and that he agreed to convey to her all the land except the land she had sold to Thomas Allen, with her husband and George Whitcomb, and the particular pieces conveyed to the I. M. R. R. as right of way—and a piece of land conveyed to Mr. Byrd, and upon which he had built a warehouse, and which she had conveyed her dower interest—she agreed to that—I made a deed for the land, except the above pieces; that his understanding was that the money was paid as the purchase price of the land, and that she was buying the land at that price ; that no particular words were used at the time; that he does not remember the conversation with Deal; that the statement of Sherman is in substance correct; that the conversation with Patterson is in the main correct; my understanding was a sale and his a redemption ; I conversed after the sale, and I think I said that if Bedford would pay all he owed us, I would re-convey the land; I think I said that. On cross-examination he said, that the conversation between Mrs. Bedford and a witness took place before he got the money ; but will not be positive, that he refused to convey all the land, and made the exceptions referred to already; that after his refusal to convey all, the widow took what we conveyed, and that since she has deeded the land to Thomas Allen; and witness states that he is a lawyer.

J. H. Bethune then testified, that he heard Jos. C. Moore remark to him, that if Mrs. Bedford was not satisfied with the deed, trade or matter, she could have the money back, and that Moore told him to tell Patterson so; and witness says that he thinks he told him ; does not remember whether Patterson made a reply or not ; the impression of witness is, that Patterson said the money was not wanted, but the land.

The defendants then introduced a deed of mortgage, signed by A. M. Bedford alone, dated the 8th day of December, 1857,

to the County of Mississippi of the east half of the south-east quarter section 6, T. 26, N. R. 16 east—the land in controversy—to secure the payment of $800; to the introduction of which deed of mortgage the plaintiff objected, on the ground that the said deed of mortgage cannot affect the rights of plaintiff, cannot avail defendants, and is immaterial and irrelevant; but the objection was overruled, and the plaintiff duly excepted.

Next the defendants introduced a deed of mortgage from A. M. Bedford alone, to J. L. Moore, Treasurer of Constantine Lodge No. 129, A. F. A. M., for the east half of the south-east quarter, section 6, T. 26, N. R., to secure the payment of $550; to the introduction of which mortgage deed, the same objection was made as before, and with like result.

The defendants then introduced a deed from Lazarus W. Pritchett, sheriff, dated 29th day of November, 1865, from which it appears that by virtue of various judgments obtained subsequent to the mortgage to the Constantine Lodge in 1855, the east half of the south-east quarter of section 6, T. 26, N. R. 16 east, was sold to George Whitcomb, on the 21st day of November, 1865; to the introduction of which deed the same objection was made as heretofore and with like result.

A deed from Bedford and wife to the St. Louis & Iron Mountain Rail Road—right of way—dated July 22nd, 1867, was next introduced by the defendants. This road passes through the land in controversy, and there is no dispute about the right of way.

The defendants next introduced a deed from A. M. Bedford and Louisiana Bedford, his wife, and George Whitcomb, to Thomas Allen, dated 14th day of September, 1868, from which it appears that one undivided one-fourth part of 40 acres in section 6, T. 26, N. R. 16 east, is conveyed to Thomas Allen; the land is described by metes and bounds, and is embraced in the south-east quarter of the south-east quarter of scetion 6, T. 26, N. R. 16 east; but the conveyance is made upon the express condition that the I. M. R. R. shall locate its depot on the land, and it is further agreed that the parties in interest, Bedford and wife, Whitcomb and Allen, shall give the

railroad six acres for railroad pnrposes; and it is further under-
stood, that the mortgage on the land is to be released by the
partners of the first part, and the deed contains a general war-
ranty of title.

The defendants then introduced a deed dated May 29th,
1868, from Jacob L. Shelby, sheriff, to George Whitcomb, for
the east half of south-east quarter, section 6, T. 26, N. R. 16
east, sold by virtue of a foreclosure had in County Court.

Also defendants introduced another deed from Jos. C.
Moore and James L. Moore, to the St. L. & I. M. R. R., dated
January 15, 1870, (objected to as irrelevant, but objection
overruled, and ruling excepted to).

The defendants then introduced the release of Louisiana
Bedford of her dower interest in the warehouse tract de-
scribed particularly in the deed, and also reserved in the deed
from the Moores to Mrs. Bedford, dated. . . . . . .

The plaintiffs then re-introduced James L. Patterson,
who said that he paid the money as Mrs. Bedford's agent to
the Moores, at the office of Jos. C. Moore; that he does not
remember that Moore said if the deed was not satisfactory, to
return it; that Mr. Bethune said that Moore said so; that he
did not communicate what Bethune said Moore said to Mrs.
Bedford; that when he and Moore were negotiating about the
land, "we always used the word redeem;" that he heard
Moore say, that he was not in a condition as an honorable
man, to make a deed for all the land to Mrs. Bedford, as he
had promised Mr. Loughborough, Allen's agent, not to put it
out of his power to convey the land to Allen—that when
Moore handed him the deed for a part of the land only, he
asked him, "are you going to convey the land not in the deed
to Mr. Allen?" Moore then said it would depend on how Mr.
Allen acted in regard to promises he made to him.  On cross-
examination, he said, as agent and attorney of Mrs. Bedford,
he directed this suit to be brought, and that Mrs. Bedford had
repeatedly ratified his action.

This was all the evidence.  The court dismissed the bill.
Motion for a new trial and re-hearing was made, but by the

court overruled, and the plaintiffs duly excepted. The cause comes here by appeal.

The foregoing is the printed statement of the case, as made by the appellant's attorney.

1. From this statement, it is evident that when the defendants purchased the mortgaged lands under decree of foreclosure, they did so with the understanding that Alfred M. Bedford, the mortgagor, might redeem. Even if there had been no such understanding, the facts and circumstances attending the sale would constitute the purchasers trustees by implication.

When a party at a judicial sale, by his acts and declarations, prevents others from bidding, and purchases the property at a sacrifice, he becomes thereby a trustee to hold the title for all parties interested.

2. This suit is brought by the plaintiff, as widow of Alfred M. Bedford, who died without redeeming the lands. The plaintiff claims the right to redeem upon the alleged ground that, as a widow, she had a dower in the lands and also a homestead.

If it be admitted that she had the right to redeem, is she not barred from redeeming the ten acres in dispute, after what transpired between her and the defendants? Through her agent she offered to redeem all the lands including the ten acres in dispute, but the defendants had made some disposition of this ten acres, and would not agree to convey it to her. Her agent then accepted a deed for the balance of the land, except some parts about which there is no dispute, and this deed was delivered to the plaintiff and accepted by her.

The agent was informed that if she did not want the land conveyed he would return the money and take back the land.

The defendants understood that the plaintiff was making a purchase, but the plaintiff looked upon it as a redemption. Viewing it in either light, the transaction ought to be a bar to any further redemption. The agent merely understood that the defendants would only make a deed for the lands conveyed, and unless this deed was accepted in satisfaction of

all right to further redemption, they would not make any deed at all. This is the manifest inference from the testimony on both sides. If the plaintiff did not intend to stand by this conveyance as a final settlement, she ought to have rejected it.

There seems to be no dispute about the power of the agent to transact the business. It was his duty to reject the deed unless accepted on the terms it was tendered. As he accepted it with a full understanding of its import, and as the plaintiff took it from him without objection, the presumption is that she stood upon this settlement as final and conclusive.

Under this view it is unnecessary to discuss the points in regard to the admissibility of the several deeds read by the defendant.

Let the judgment be affirmed. The other judges concur.